The **BAY GUARDIAN COMPANY**, a corporation, et al., Plaintiffs,

v.

The **CHRONICLE PUBLISHING COMPANY**, Inc., a corporation, et al., Defendants.

No. C-70-1613.

United States District Court, N. D. California.

June 21, 1972.

**1156**

Stephen Barnett, Berkeley, Cal., Charles Cline Moore, San Francisco, Cal., for plaintiffs.

Cooper, White & Cooper, James J. Brosnahan, Garret McEnerney, II, San Francisco, Cal., for defendants.

### ORDER DENYING MOTION TO STRIKE ANSWER

OLIVER J. CARTER, Chief Judge.

This action may best be described as one to test the constitutionality of the Newspaper Preservation Act (15 U.S.C. §§ 1801–04), (henceforth Act), which was passed July 24, 1970. The Act grants a special limited exemption from the antitrust laws to certain types of newspapers. Originally the plaintiffs sought in one section of their complaint a declaratory judgment that the Act was unconstitutional. This Court found in an order dated February 24, 1972, 340 F. Supp. 76, that such an action could not be maintained for technical jurisdiction-

al reasons. Now the defendants have answered the antitrust portions of the complaint by asserting the Act in two affirmative defenses to those claims.

The plaintiffs have now moved to strike those defenses on the ground that the Act is unconstitutional on its face and as applied.

The defendants since September, 1965, have operated under a joint operating agreement. By that agreement one newspaper (News-Call-Bulletin) was put out of existence while the two remaining dailies (Examiner and Chronicle) were allotted the afternoon and morning markets respectively. All printing is done by a jointly owned subsidiary, the San Francisco Newspaper Printing Company, a named defendant. The editorial staffs of the two remaining papers, the Chronicle and Examiner, are kept independent, though they jointly publish a unified Sunday edition. Profits from all operations are pooled and shared on a 50/50 basis. Thus the defendant papers have eliminated all competition between them and have achieved a monopoly position in the San ·Francisco daily newspaper market, so that profits are now quite substantial.

The plaintiffs are the owners and publishers of a small paper that has been a bimonthly paper and is now monthly. They contend that the defendants' monopoly position in the San Francisco market enables the defendants to destroy or weaken any potential competition. They contend that this monopoly position accounts for the continually declining quality of the editorial and news content of both papers. They contend that the profit sharing, joint ad rates, and other cooperative aspects of the joint operating agreement enable the defendants to establish and perpetuate a stranglehold on the San Francisco newspaper market. The plaintiffs contend that the Act is unconstitutional because it unfairly encourages this journalistic monopoly.

The Act provides that newspapers in economic distress may enter into joint operating agreements. It further provides that existing joint operating agreements are also allowable if at the time an agreement was entered into one of the papers was not financially sound.

Newspapers for purposes of the Act were defined to include only those publishing one or more issues weekly. Permissible joint operating agreements are accorded an exemption from the operation of the Federal Trade Commission Act, and other antitrust acts. That exemption was specifically extended to any civil or criminal proceedings pending on July 24, 1970, the date the Act was passed.

For the purposes of ruling upon the plaintiffs' motion to strike the affirmative defenses related to the Act, the Court has assumed that the Act is applicable to the defendants' joint operating agreement. The terms of the Act provide that it is to apply to daily newspapers, no more than one of which "was likely to remain or become a financially sound publication" (§ 1803(a)). The Court offers no opinion at this time whether the defendant newspapers will be able to prove at the time of trial that they came within that definition when they began joint operations.

## I. *First Amendment*

Plaintiffs contend that the Act is unconstitutional because it permits the defendant newspapers to combine so as to prevent the plaintiffs' newspaper from publishing. This effect of the Act, they contend, causes it to be in violation of the freedom of the press guarantee of the First Amendment.

The simple answer to the plaintiffs' contention is that the Act does not authorize any conduct. It is a narrow exception to the antitrust laws for newspapers in danger of failing. Thus it is in many respects merely a codification of the judicially created "failing company" doctrine. See, 83 Harv.L.R. 673 (1970).

Much of plaintiffs' argument seems directed at a phantom Act which conveys a government license to monopolize to certain newspapers at the expense

**1158**

of others. Whatever might be the constitutional status of such an Act, it is not the one now before us. The Act pertinent to this case does not confer any license to monopolize and indeed has a specific provision prohibiting "predatory practices" (§ 1803(c)). The case of Grosjean v. American Press Co., 297 U.S. 233, 56 S.Ct. 444, 80 L.Ed. 660 (1936), relied on heavily by the plaintiffs, is clearly inapplicable. In that case the Supreme Court ruled unconstitutional a state taxing statute that was clearly aimed at certain large metropolitan newspapers that had opposed the political machine then in control of that state. It was a clear and obnoxious political reprisal against the press by a corrupt demagogue. There is simply no comparison between that factual situation and the one underlying the instant legislation.

■ Here the Act was designed to preserve independent editorial voices. Regardless of the economic or social wisdom of such a course, it does not violate the freedom of the press. Rather it is merely a selective repeal of the antitrust laws. It merely looses the same shady market forces which existed before the passage of the Sherman, Clayton and other antitrust laws.

Such a repeal, even when applicable only to the newspaper industry, does not violate the First Amendment.

## II. *Equal Protection*

Plaintiffs contend that the Act confers a privileged economic status upon the defendant newspapers and thus denies the plaintiffs equal protection of the laws. (As applied to federal government through the Fifth Amendment, Bolling v. Sharpe, 347 U.S. 497, 74 S.Ct. 693, 98 L.Ed. 884 (1954)).

The kernel of the plaintiffs' reasoning is that the Act affects First Amendment rights and thus should be subjected to a more rigorous standard of propriety, "the compelling interest" test. The Court does not believe that the cases cited by the plaintiffs provide support for these contentions.

■ Williams v. Rhodes, 393 U.S. 23, 89 S.Ct. 5, 21 L.Ed.2d 24 (1968) involved the requirements imposed by the election laws of Ohio upon political parties wishing to secure a place on the ballot in a presidential election. The laws of the State of Ohio made it "virtually impossible for any party to qualify on the ballot except the Republican and Democratic Parties." 393 U.S., at 25, 89 S.Ct., at 8. There are no such discriminatory qualifications contained in the instant Act. It merely requires that the merged newspapers publish at least once a week and that one of the merged papers be in danger of failing. There is no political or other discrimination either on the face of the Act or in any implicit terms. Furthermore the Ohio law was one regulating the access to the ballot and the political process. The Act in question does not regulate or restrict publishing, rather it merely permits newspapers to merge when they might not otherwise have been able to do so because of the antitrust laws.

Again this Court notes that it does not express an opinion on the wisdom of the instant legislation, but only the contention that the Act violates the Equal Protection or Due Process clauses of the Constitution.

■ As to the contention that the Act violates equal protection by establishing different qualifications for papers which had already entered into a joint operating agreement as opposed to those which had not yet made such an agreement; the Court finds that the plaintiffs are without standing to assert that argument.

■ There is no contention that the plaintiffs have ever published more frequently than twice monthly. By the terms of the Act they would therefore not qualify for its exemption. The Court expresses the opinion, however, that it is entirely rational for Congress to decide that daily newspapers are more vital to the well being of the nation and accordingly make rules or exceptions for dailies that are not made for bimonthlies.

### III. *Overbreadth*

■ The plaintiffs contend that the Act violated the First and Fifth Amendments to the Constitution because it goes much further than would be necessary to accomplish its objective. In formulating this argument they posit that the Act imposes restraints upon the publication of their newspaper. The Court, *supra,* does not accept that characterization of the Act and so finds this contention faulty. Without commenting upon the wisdom of the Act, the Court does not read it to impose restraints upon the plaintiffs' ability to publish their newspaper. Indeed the Act specifically forbids newspapers operating under a joint operating agreement from; ". . . predatory pricing, any predatory practice, or any other conduct in the otherwise lawful operations of a joint newspaper operating arrangement which would be unlawful under any antitrust law if engaged in by a single entity." (§ 1803(c))

It may be that Congress could have adopted a less heavy-handed piece of legislation to accomplish the objective of maintaining the solvency of large metropolitan daily newspapers. However this Court does not detect any compulsion for such rectitude in either the First or Fifth Amendment. Congress has legislated under the Commerce Clause and this Court will uphold the ability of Congress to so act even if its decision may have been unwise. This Court does not sit as a superlegislature to re-evaluate the financial and other data upon which Congress made its decision. Finding no constitutional defect in the Act this Court cannot negate the legislative judgment upon a matter within Congress' power to act.

### IV. *Act Fails to Carry Out Congressional Purposes*

■ The plaintiffs contend that the Act permitted the defendants to eliminate one of the former newspapers in the city (News-Call-Bulletin) and thus deprive the San Francisco public of the guarantee of freedom of the press. The Court does not so read the Act. There is nothing contained in the Act which would appear to authorize the elimination of a newspaper as part of a joint operating agreement. Indeed the whole tenor of the Act is the preservation of existing papers. It is a matter of evidence to be determined at trial whether the conduct of the defendants while entering their joint operating agreement bars them from the protection of the Act. There is nothing in the provisions of the Act to lead the Court to believe that it contemplates or permits the elimination of an established editorial voice.

### V. *Retroactivity*

■ The plaintiffs contend that since by its terms the Act was specifically made applicable to pending cases, its application in this case deprives them of accrued causes of action without due process of law. The Court does not believe that to be so. This suit was not even filed until after the Act was passed. Accordingly the only interest the plaintiffs may be said to have had at that time was a prospective lawsuit under a certain rule of law (the antitrust laws). Now by the terms of the Act those antitrust laws no longer apply to certain conduct which formerly might have been actionable. That is not retroactivity. Plaintiffs had nothing other than an expectation that a given rule of law would remain the same; there is no vested right in the continuation of such a rule of law.

In addition, this Court knows of no case, and the plaintiffs have cited none, which holds that Congress is prohibited from changing or repealing legislation. That is all that has been done in this case. Congress has decreed that certain portions of the antitrust laws will no longer apply to certain types of newspapers. To insure uniformity Congress specified that the exemption will apply to all pending cases. This does not vio-

**1160**

late any constitutional provision of which the Court is aware.

VI. *Pre-emption of Cartwright Act*

The plaintiffs contend that the Act was not intended to and cannot constitutionally be applied to pre-empt the California antitrust statutes. (Cartwright Act, Business and Professions Code §§ 16700–16758).

 Generally both the states and Congress have legislated in the area of antitrust and monopoly. This Court would be loath to hold at this late date that the federal government has by a particular action completely pre-empted or "occupied the field". At the same time it is clear from the statement of intent, as well as the regulatory language of the Act, that Congress intended that newspapers be permitted to form joint operating agreements. It appears to the Court that no insoluble difficulty is posed by these contending positions. The most likely reading of the Act is that insofar as joint operating agreements are concerned, they are to be validated and insulated against state as well as federal antitrust proceedings. This would in any event be clearly mandated by the Supremacy Clause (Article VI) of the Constitution, since otherwise state laws forbidding such joint operations would nullify the congressional purpose. At the same time there is no reason either in the regulatory language of the Act or in the declaration of policy (§ 1801) to find that the state antitrust laws cannot be given effect when consistent.

 The Act itself has specific regulatory language regarding predatory practices that indicates that it is only a partial exception to the federal antitrust laws. The Court, accordingly interprets the Act to contemplate concurrent state antitrust regulation in those areas and to the extent that they are not exempted from federal antitrust laws. There is nothing contained in either the Act, the Commerce Clause, or the Supremacy Clause that will prevent the application of the Cartwright Act to defendants' conduct that is predatory or otherwise outside the limited exemption for joint operating agreements. Such determinations must of course await the fact finding processes of trial.

For the reasons discussed in section V of this opinion, the Court sees no difficulty with respect to the claim that this exemption from state law is retroactive and hence impermissible.

*Conclusion*

The Court has discussed each of the principal contentions of the plaintiffs as it understands them to be. It has encountered some difficulty in that the arguments were first advanced in memoranda directed to defendants' motion to dismiss and have only by reference been adapted to the plaintiffs' motion to strike portions of the answer.

 The Court concludes that the Newspaper Preservation Act is a constitutional statute that violates neither the First nor Fifth Amendment to the Constitution. The Court further concludes that the Act does not pre-empt but merely modifies in part the operation of state antitrust laws. Finally, the Court concludes that the Act can constitutionally be applied in this action to conduct occurring both before and after passage.

Accordingly, on the basis of the foregoing conclusions,

It Is Ordered that the plaintiffs' motion to strike the 1st and 2nd affirmative defenses asserted in the answer be, and the same is hereby denied.